**FORT WORTH & D. C. RY. CO. v. MILLS.**

No. 5150.

Court of Civil Appeals of Texas.   Amarillo.

April 22, 1940.

Rehearing Denied May 20, 1940.

J. B. Clark, of Shamrock, and Luther Hudson and Thompson & Barwise, all of Fort Worth, for appellant.

Marion Reynolds, of Shamrock, and Cummings & Johnson, of Fort Worth, for appellee.

STOKES, Justice.

This case was instituted by appellee, W. A. Mills, to recover damages for personal injuries to his wife which he alleged she received in a fall from the steps of a platform attached to appellant's shipping pens at Magic City in Wheeler County. Appellee was an employee of appellant in the capacity of section foreman and, appellant having no section house or regular established quarters on the section for use of the foreman and his family and the section hands, furnished to appellee two outfit cars which consisted of ordinary box cars that had been remodeled and equipped for residential purposes. One of these cars was used as a living room and the other as kitchen and dining room in one end and sleeping quarters in the other end. In connection with these cars appellant also had another outfit car which was used by other employees, presumably the section hands, in which they maintained batching quarters where they did their own cooking. Under ordinary circumstances the only means of ingress and egress to these cars were flights of perpendicular steps or short ladders at the doors which were attached to the cars. It being difficult for Mrs. Mills, who was an unusually heavy woman, to climb up and down these perpendicular steps, appellee requested appellant's train crew to locate the outfit or boarding cars alongside the platform at the shipping pens. The floor of the platform was practically on a level with the floors of the cars and at the east end of the platform was a flight of five ordinary steps of convenient rise and incline for ascent and descent. It was principally for the purpose of having access to this more convenient means of egress and ingress to the outfit cars being occupied by appellee and his wife that they

requested the train crew to "spot" or locate the outfit cars alongside the platform.

The cars had been so located and appellee had been using them in this manner for about nine months immediately preceding Mrs. Mills' injury. On May 10, 1938, Mrs. Mills, desiring to leave the outfit car and embark on a legitimate mission, stepped out on the shipping pen platform, approached the flight of steps at the east end thereof, and attempted to descend to the ground. As she descended from the platform to the first step, the step tilted or turned under her foot or in some manner came loose and she was precipitated down the steps to the ground, receiving injuries described in the petition.

The case was submitted to a jury upon special issues and upon the verdict returned in answer thereto, judgment was rendered in favor of appellee in the sum of $2,000. Appellant filed a motion for a new trial which was overruled and it gave notice of appeal which it has perfected, and it presents the case in this court upon ten propositions of law under which it contends the judgment should be reversed and rendered in its favor or remanded for another trial.

The case seems to have been tried upon the theory that appellee was the tenant of appellant in occupying the outfit cars and that the duties and liabilities of the parties are governed by the principles of law applicable to the relationship of landlord and tenant. Appellant contends, first, that the platform and steps not being a part of the outfit cars and the cars being placed alongside of the platform for the convenience of appellee, he was a licensee in respect thereto; that no duty devolved upon appellant to maintain them in safe condition and the court, therefore, erred in refusing a peremptory instruction and in overruling its motion for a judgment upon the verdict. Secondly, that at most Mrs. Mills was no more than an invitee in her use of the steps and appellant owed her no duty in respect thereto further than to protect her from hidden or latent dangers known to it.

Other propositions are presented in which appellant assigns error in the submission of certain special issues and elements of damage but the two contentions we have mentioned present the controlling questions and we do not deem it necessary to discuss the others.

A licensee is said to be a person whose entrance upon or use of the premises of another is permitted by the owner under such circumstances as that he is not a trespasser but is without any express or implied invitation. He, therefore, occupies a position lying somewhere between that of a trespasser and that of one who has been invited upon the premises by the owner or one having authority to extend an invitation to enter upon the same. He is on the premises by sufferance and not by virtue of any business or contractual relation with, or any enticement, allurement, or inducement to enter being held out to him by, the owner or occupant, but merely in his own interest or for his own purposes, benefits, convenience or pleasure. Hicks v. Gulf, C. & S. F. Ry. Co., Tex.Civ.App., 212 S.W. 840; Mack v. Houston, E. & W. T. Ry. Co., Tex.Civ.App., 134 S.W. 846.

We do not agree with appellant that appellee was upon the stockpen platform of appellant merely by sufferance nor that he was there without any contractual relations, merely in his own interest and for his own purposes and benefit. By "spotting" or placing the outfit cars alongside the platform appellant consented to the use by appellee of the platform in the same manner as it consented for the use by him of the outfit cars which he was using as a place of residence while discharging the duties incident to his employment by appellant. It is true the evidence shows and the jury found that the outfit cars were placed alongside the platform at the request of appellee but it is quite evident from the record that appellant's employees in charge of the train and who placed the cars at the platform, as well as the other agents and servants of appellant who were in charge of such matters, knew the purpose for which appellee desired the cars placed at the platform and were familiar with, and acquiesced in, the use to which appellee intended to, and did, subject the platform. That use was in connection with and as a part of the premises utilized by him as a place of abode while he was employed at that point by appellant. This, we think, removes the relationship from that of a mere licensee and presents a situation entirely different from that which the law contemplates in designating the relationship that must exist in order to create the status of a licensee.

Nor do we agree with appellant in its contention that appellee was a mere

invitee upon the platform and steps connected with the shipping pens. This relationship is created when one is upon the premises of another under circumstances rendering his presence of mutual aid to both. Galveston Oil Co. v. Morton, 70 Tex. 400, 7 S.W. 756, 8 Am.St.Rep. 611. It was said in the case of Kruse v. Houston & T. C. Ry. Co., Tex.Civ.App., 253 S.W. 623, 625: "In the absence of some relation which inures to the mutual benefit of the two, or to that of the owner, no invitation can be implied, and the injured person must be regarded as a mere licensee."

While it is true that the use of the platform and steps in a sense inured to the benefit of the Railway Company, it cannot be said to be that kind of use' which is contemplated when speaking of the relationship of the owner of the premises and an invitee thereon. Broadly speaking, that which was convenient for its employees and which made them more comfortable in their living ·quarters inured, to some extent at least, to the benefit of the Railway Company, but the same could be said of the outfit cars in which they slept at night and in which they maintained their place of residence. In our opinion, the case is not governed by the rules which control these relationships and these contentions of appellant are untenable.

■■■ Conceding that the relationship existing between appellant and appellee was that of landlord and tenant, as contended by appellee, in our opinion they were not entitled to a judgment against appellant upon the facts revealed by the record. It is not alleged nor contended by appellee that appellant agreed to make any repairs to, or improvements upon, the platform and steps, nor that it agreed to maintain them in the condition in which they were at the time appellee appropriated them some nine months before Mrs. Mills was injured. It is not alleged nor even suggested that appellant was guilty of any fraud or concealment by failure to · disclose hidden defects of which it had any knowledge, either at the time appellee appropriated the steps and platform, or afterwards. It is well-established law in this state, and most, if not all, of the other states in the Union, that in the absence of a statute or .an agreement by the landlord to make 'improvements or repairs to the premises and in the absence of fraud or concealment of the landlord by his failure to disclose hidden defects of which he has knowledge, the tenant takes the risk of

the safety of the premises and the landlord is not liable to him nor to anyone entering under his title or by his invitation for injuries received on account of the unsafe condition of the premises. Churchwell v. Pure Oil Pipe Line Co., Tex.Civ.App., 289 S.W. 196; Perez v. Raybaud, 76 Tex. 105, 13 S.W. 177, 7 L.R.A. 620; Peticolas v. Thomas, 9 Tex.Civ.App. 442, 29 S.W. 166; Miller & Bro. v. Nigro, Tex.Civ.App., 230 S.W. 511; Archibald v. Fidelity Title· & Trust Co., Tex.Civ.App., 296 S.W. 680; Ross v. Haner, Tex.Com.App., 258 S.W. 1036, 1037.

In the case last cited Judge Bishop, speaking for the Commission of Appeals, said: "The mere relation of ·landlord and tenant creates no obligation on the part of the landlord to repair or keep in repair the leased premises. The tenant takes the premises as· he finds them."

This court, speaking through Chief Justice Huff, in the case of Miller & Bro. v. Nigro, supra, made the same holding in the following language [230 S.W. 513]: "There is no implied warranty upon the part of the landlords that the premises are fit for the purposes for which they are leased. If the tenants desire to have the landlords make changes or repairs, and to hold them responsible for failure, the tenants should have had such covenant incorporated in the agreement to lease."

In the case of Perez v. Raybaud, supra, our Supreme Court, quoting and approving the doctrine as contained in Thompson on Negligence, said [76 Tex. 105, 13 S.W. 178, 7 L.R.A. 620]: "In the absence of fraud or deceit, there is no implied covenant that the demised premises are fit for occupation, or for the particular use which the tenant intends to make of them. * * * Therefore the tenant has no remedy against the landlord for suffering the premises to get out of repair * * * and this rule extends to servants and others entering under the tenant's title."

■■■ Appellee, in his brief, indicates that he is in accord with our holding in this respect, but he contends that a portion of the leased premises, that· is, a portion of the platform and steps, was used by appellant for other purposes and that other tenants of appellant appropriated the same. He asserts, therefore, that these diverted uses, acquiesced in by appellant, takes this case out of the general rule and places upon the landlord the duty to keep the premises in repair. It is quite true that

where a landlord leases a portion of a building and retains another portion of it, where it is necessary to keep in a good state of repair the portion retained in order that the tenant may occupy the portion leased by him, a different rule applies and the duty devolves upon the landlord to maintain in a reasonably safe state of repair that portion of the building which controls the comfort of his tenant. To illustrate: If the landlord retains control of the upper floor of a two-story building he is charged with the duty of exercising ordinary care to maintain the roof and drain pipes in such condition that merchandise of a tenant of a lower floor will not be damaged by water leakage through the roof. Archibald v. Fidelity Title & Trust Co., supra. This contention of appellee is based upon his assertion that the employees of appellant who were maintaining living quarters or "batching" in the third outfit car used the steps along with appellee and, also, that, as shown by the record, on occasions when it was necessary for appellant to use the shipping pens for the purpose of loading livestock for shipment, the outfit cars being occupied by appellee were removed from the platform and steps and appellant took complete charge and control thereof during the process of loading the livestock. In support of this contention appellee cites us to the case of Archibald v. Fidelity Title & Trust Co., supra, and other similar cases. The testimony does not support appellee in this contention. Mrs. Mills testified that her husband had an office and desk in the outfit cars occupied by them and that the other employees, on occasions, had business with him there. She said, however, that in going to his desk these employees usually came up the other side of the car and climbed up the steps into the door next to the main line which she described as being the perpendicular steps and not the steps connected with the platform. She said that once in a while when they came around the car or came in from the garage they would come up the steps. The only other persons whom she mentioned as using the steps were those whom she designated as "company that we had," by which she evidently meant friends or neighbors who paid them occasional friendly visits. This is not sufficient to remove the case from the general rule. Certainly it does not place the platform and steps from which Mrs. Mills fell in the category of an apartment stairway or the lower story

of a building, the upper story of which is leased to others or retained in the possession of the landlord. In fact, according to Mrs Mills' testimony, it was only an occasional use of the steps that was made by the other employees and it is not shown nor claimed that even they had any specific permission from appellant to do so. Furthermore, when they did use them it was on the occasions when they had business with appellee and desired to see him in his office or at his desk.

As to the contention of appellee that the occasional use of the shipping pen platform and steps by appellant for the purpose of loading shipments of cattle when appellee's outfit cars would be pushed down the track during the process of loading, we do not think it could, with any sound reasoning, be said that this was sufficient to remove the case from the general rule and place it within the rule we have mentioned or bring it under the doctrine announced in the case of Archibald v. Fidelity Title & Trust Co., supra. It may be true that, during the process of loading the livestock, which we must know was of short duration, appellant did have complete charge of the loading pens and the platform and steps, but there is nothing in the record which indicates that during the time appellee and his family were using them and while the outfit cars were standing alongside of them, appellee did not have complete possession of them for the purposes for which they were being used by him. These conditions were by no means the same as those which prevail in case of the common stairway of an apartment house in which numerous tenants have apartments, or a two-story building where the tenant occupies the lower floor and the upper floor is retained in the possession of the landlord. In neither of these latter cases does the tenant have access to the stairway in the one or the roof in the other for the purpose of making repairs. They are not in his possession for that purpose and the law, therefore, places upon the landlord the duty of keeping them in a reasonable state of repair. Appellee and his wife evidently understood that they had access to, and possession of, the steps for the purpose of making necessary repairs because Mrs. Mills testified that if, before her fall, she had observed the unsafe condition of the step from which she fell, she would have procured a hammer and nails and repaired it. And appellee testified that, after his wife's injury, he repaired

the step by securely nailing it to the carriage which supported the flight of steps.

In view of the well-established rules governing the relationship of landlord and tenant and the holdings of the courts in the cases we have cited, we are forced to the conclusion that these contentions of appellee cannot be sustained and that he was not entitled to a judgment on the theory contended for by him.

As we interpret the allegations and proof presented by the record the relationship existing between appellant and appellee throughout was that of employer and employee. Even upon this theory, however, appellee was not entitled to recover. The allegations and all the testimony are to the effect that appellee was employed by appellant as section foreman; that appellant did not have a residence or section house upon the section of road under Mills' jurisdiction, and in lieu thereof it furnished him the outfit cars for occupancy as living quarters by himself and his family. There is no suggestion that any contract of lease or rental existed between the parties nor that Mills paid any specific amount as rental for the outfit cars, platform or steps. Both the allegations and proof are to the effect that these were furnished him in connection with his employment and in lieu of the ordinary section house where such employees and their families ordinarily reside. It was not alleged nor shown that any deduction was made from Mills' salary as consideration for the use of the outfit cars nor that he was paid any less salary than he would have been paid if he had furnished his own living quarters, but even if such had been alleged and proved, it would not have been sufficient to establish the relationship of landlord and tenant. Appellee's right to the possession of the outfit cars was not superior to, nor different from, his contract of employment. The compensation for their use was in the labor performed on the section of railroad under Mills' jurisdiction. When the labor ceased the right to occupy the outfit cars came to an end and in no sense can this be construed to be a relationship of landlord and tenant. The premises were not demised to appellee for any term nor did he have any rights therein that were not connected with and indeed a part of the contract of employment. Bowman v. Bradley, 151 Pa. 351,

24 A. 1062, 17 L.R.A. 213; Trustees of East Norway Lake Norwegian, etc., Church v. Froislie et al., 37 Minn. 447, 35 N.W. 260; Presby v. Benjamin, 169 N.Y. 377, 62 N.E. 430, 57 L.R.A. 317; School Dist. v. Batsche, 106 Mich. 330, 64 N.W. 196, 29 L.R.A. 576.

If it should be said that this holding brings the case within the rule which requires the employer to furnish and maintain for the employee a safe place in which to work, the answer would be found in the jury's finding in answer to special issue No. 19 wherein they found that the condition of the top step from which Mrs. Mills fell was open, obvious, and apparent to anyone using the steps. This cannot be construed otherwise than to mean that the employee, appellee here, stood upon an equal footing with the appellant, his employer, in respect to knowledge of the danger in connection with the use of the steps. The rule is well established that if the master and servant stand upon an equal footing with respect to such matters and an accident results therefrom, the master is exonerated. The employee assumes the risk of those dangers which are within his actual knowledge and those of which he would learn by the exercise of such care as would be observed by a person of ordinary prudence. The record contains pictures of the steps which pictures were exhibited to the jury and which admittedly reflect the condition of the steps at the time of the injury. The finding of the jury to the effect that the condition of the top step was open and obvious to anyone using the steps is amply supported by the testimony. In fact, it was not controverted by any witness. The conclusion is inescapable, therefore, that appellee was not entitled to recover under the rules which govern the relationship of master and servant. Bonnet v. Galveston, H. & S. A. Ry. Co., 89 Tex. 272, 33 S.W. 334; Texas & P. Ry. Co. v. French, 86 Tex. 96, 23 S.W. 642; Kirby Lbr. Co. v. Hardy, Tex. Civ.App., 196 S.W. 211; Trinity & B. V. Ry. Co. v. Perdue, 45 Tex.Civ.App. 659, 101 S.W. 485.

From what we have said it is obvious that, in our opinion, the court erred in overruling appellant's motion for a peremptory instruction and its motion for a judgment upon the verdict of the jury. The case seems to have been fully developed and we conceive no beneficial

purpose that could be served by remanding it for another trial.

The judgment of the court below will be reversed and judgment here rendered that appellee take nothing by his suit.